**LANDRENEAU v. PERRON.**
No. 1759.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1937.

Atlee P. Steckler, of Ville Platte, for appellant.

E. H. Guillory, of Ville Platte, for appellee.

DORE, Judge.

This is the second time this case has been before us. The pleadings and the transactions had thereunder have been fully set out in the judgment rendered on its first hearing and need not again be restated. The case was remanded to the lower court for the purpose of determining whether or not the contract or agreement on which plaintiff seeks a specific performance was in writing, and, if so, whether or not said agreement has been lost; and, if lost, to admit parole proof of its contents. See (La.App.) 174 So. 140.

Upon remand, evidence was offered in pursuance to our decree, and there was judgment in favor of plaintiff, ordering the specific performance of the contract. Defendant has appealed.

The case involves principally a question of fact. The first and foremost question of fact to be determined is: Was there a written agreement between the plaintiff and defendant, and, if so, whether the same has been lost?

The plaintiff testified that he himself prepared the written agreement three or four days after he made the deposit of $280 to cover the first payment to the Land Bank; that it was typewritten by him at his gin and signed there by defendant; that two other men were present, Mr. Remie Fontenot, a deputy sheriff, and John Landreneau, a justice of the peace; that he told his attorney at the time the suit was prepared and filed that he had a written agreement, but did not give it to his attorney nor produce it until the day the default was confirmed against the defendant; that, on that day, he had the written agreement with him along with other papers and handed the agreement either to the presiding judge or to his attorney at the time that the default was confirmed; and that he does not know what has become of it thereafter.

John Landreneau testified that there was some kind of an agreement signed at the gin between plaintiff and defendant in the fall of 1935 about plaintiff buying a place for defendant, which defendant was to work as a share cropper, and to transfer the same to plaintiff whenever plaintiff wanted the place. This witness could not say just what the agreement was, except that he heard the two men talking about it, and what it was about and that they signed the same.

Remie Fontenot says that he was at the gin and heard plaintiff and defendant and John Landreneau talking about some kind of an agreement that they were signing, providing that plaintiff would purchase a place for defendant, but did not see them sign any agreement, merely testifying that the plaintiff and defendant were signing an agreement.

The testimony of the attorney for plaintiff is to the effect that there was an agreement presented in court when the default was confirmed which was handed by plaintiff either to the judge or the minute clerk, he could not tell which; that he did not pay any special attention to the document and does not know what became of it, as he was very busy and that he did not think that there would be any contest. The attorney never had the agreement in his possession, but says that the plaintiff told him that he had a written agreement.

The minute clerk of court could not say whether or not any such document was handed to him or left in his possession or in the courtroom, but that he found no such document filed in evidence or in the record. The chief deputy clerk cannot say that there was no such document presented by plaintiff, but that he did not find any such document filed in evidence or in the record.

There is considerable testimony in the record—and in fact an agreement—between Deshotels who had had an agreement with the plaintiff to transfer lands which plaintiff had purchased for him, and it is claimed that the written agreement with Perron was similar to this agreement. This witness testified that Perron, to his knowledge, had a like agreement with plaintiff, but that he does not know whether or not Perron had signed it.

The defendant denies that he signed any agreement, and denies every essential fact

in this litigation, contending that he purchased the property for himself and no one else, and under no contract with the plaintiff as alleged. Of course, there was no corroboration of his testimony, as no other person was at the gin office when the agreement is supposed to have been signed. Defendant's wife says that her husband did not sign such an agreement, but of course her testimony is based on what her husband told her, and the further testimony that plaintiff told them that he would take a special mortgage on the property for the money he had loaned or advanced for the first payment on the property.

The trial judge, who is a better judge of the credibility and integrity of the witnesses than we are, came to the conclusion that there existed a written agreement and that the same had been lost. We cannot say that he manifestly erred, and we will not, therefore, disturb his conclusions thereon.

We now pass to the second and final question, the contents of the purported written agreement. We are of the opinion that there is little for dispute. In fact, it is clear that the purported written agreement contained terms about as claimed by the plaintiff and as alleged in his petition; all the facts indicate it as well as the circumstances. Defendant denies them, but he practically acknowledged that he was a share tenant by voluntarily paying plaintiff one-third of the proceeds of the crop for the year 1936. It is also significant that defendant purchased materials to repair the property and had it charged to plaintiff, and there is no dispute that plaintiff advanced the first payment to the Federal Land Bank; and the notices for the installment due in the fall of 1936 were brought to plaintiff by defendant; defendant told other persons on numerous occasions that he was working for plaintiff as a tenant, and never claimed to own the property or to owe for the purchase price.

Plaintiff has filed an answer to the appeal in which he has asked for 10 per cent. damages for a frivolous appeal. Damages will not be allowed when judgment appealed from is not a money judgment. See Arrowsmith v. Rappelge et al., 19 La.Ann. 327, 328.

For these reasons, the judgment is affirmed at appellant's cost.